UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80728-CIV-HURLEY

SIMA SALIMY,
    plaintiff,

vs.

BETHESDA HOSPITAL, INC.,
BETHESDA HOSPITAL FOUNDATION, INC.
and JOHN DOES 1-5.
    defendants.

_____/

OPINION ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Plaintiff Sima Salimy ("Salimy") sues her former employer, Bethesda Hospital, Inc. and Bethesda Hospital Foundation, Inc. ("Bethesda"), alleging national origin and religious discrimination in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count 1), and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.01 *et seq*. (FCRA) (Count 2). Salimy also alleges Title VII and FCRA retaliation claims (Count 3). [1]

Bethesda has moved for entry of summary judgment on the following grounds: (1) failure to establish a *prima facie* claim of disparate treatment for lack of evidence of an adverse employment action, as well as lack of evidence of adequate, similarly situated comparators who were treated more

---

[1] Employment claims brought under sections 1981 and the FCRA employ the same analysis as Title VII disparate treatment claims. *Nash v. Palm Beach County School District*, 469 Fed. Appx. 712, 713 n. 3 (11th Cir. 2012) (unpub), citing *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F. 3d 836, 843 (11th Cir. 2000) and *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385 (11th Cir. 1985); *Jiles v. United Parcel Service, Inc.*, 360 Fed. Appx. 61, 2010 WL 27958 (11th Cir. 2010) (unpub). Because courts construe FCRA and Section 1981 in conformity with Title VII, the current analysis draws largely from case law interpreting Title VII.

favorably; (2) failure to establish a *prima facie* claim of a hostile work environment for lack of evidence of derogatory religious or ethnically-charged commentary reaching the level of pervasiveness needed to show alteration of a material term or condition of employment; (3) failure to establish a *prima facie* retaliation claim for lack of evidence of an adverse employment action.

## I. Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). To prevail on a motion for summary judgment, the movant must show that the plaintiff has offered no evidence to support an essential element of his case, or present affirmative evidence that plaintiff will be unable to prove one or more essential elements of the case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidence demonstrating a genuine issue of material fact for trial. *Id.*

Thus, summary judgment is appropriate when the moving party meets its burden of demonstrating that no genuine issue of any material fact exists, and the non-moving party fails to present evidence on an essential element of claim showing that a reasonable jury could find in its favor. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Unsupported speculation does not create a genuine issue of material fact, *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005), and "bare and self-serving" allegations made without personal knowledge are inadequate to survive summary judgment. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000).

In ruling on a motion for summary judgment, the court is obligated to construe the facts and

draw all reasonable inferences in the light most favorable to the non-moving party. *Owen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Cir. 2011). If conflicts arise between the facts developed by the parties, the court must credit the non-moving party's version, *Davis v. Williams*, 451 F.3d 7599 (11th Cir. 2006), unless that account "is inherently incredible and could not support reasonable inferences sufficient to create an issue of fact." *Morton v. Kirkwood,* 707 F.3d 1276 (11th Cir. 2013) (quoting *Riley v. City of Montgomery*, 104 F.3d 1247, 1251 (11th Cir. 1997)). For example, if the non-moving party presents an affidavit describing material, external facts based on first-hand personal knowledge – and not subjective belief – the court is required to credit those statements and allow the jury to be the arbiter of any conflicts in the evidence. *Feliciano v. City of Miami Beach*, 707 F.3d 1244 (11th Cir. 2013) (quoting *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices"). On the other hand, if an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible. *Morton v. Kirkwood, supra.*

With these standards in mind, the court reviews the plaintiff's evidence in a light most favorable to her position in the context of this summary judgment proceeding.

## II. Facts[2]

Plaintiff Sima Salimy was born in Iran and is a member of the Islamic faith. Defendant Bethesda Hospital first hired Salimy on a part-time basis as a nuclear medicine technician in 2005. After three months, Salimy voluntarily left that post for a better paying position elsewhere. On

---

[2] The recited facts, drawn from the parties' pleadings and the plaintiff's deposition testimony [ECF 32-1; 32-2], are undisputed unless otherwise noted.

3

March 28, 2006, Bethesda rehired Salimy as a full-time nuclear medicine technician working directly under the supervision of Christy Arena. Salimy was then continuously employed at Bethesda up through mid-June, 2014, when she voluntarily resigned.

Arena consistently gave Salimy favorable annual performance reviews throughout the entire term of her employment. However, Salimy contends that Arena discriminated against her, on the basis of her national origin or religion, through a series of adverse employment decisions. As evidence of Arena's discriminatory animus, Salimy identifies the following three incidents:

(1) In 2008, Salimy alleges that she left a phone message for Arena, who later told Salimy she could not understand the message, and suggested "Why don't you just send me an e-mail. Your accent is not in your e-mail." Plaintiff did not lodge any formal complaint about this comment.

(2) In January 2010, at a department meeting, Arena announced the creation of a second shift which would be assigned, on a rotating basis, to all technicians in the nuclear medicine department. She also announced that Salimy was the first person scheduled on the rotation. Salimy told Arena it was impossible for her to work this shift because she needed to pick up her fifteen and seventeen-year-old children from school in the afternoons. When Arena did not accommodate her scheduling request, Salimy went to Human Resources (HR) to complain that the "newest hire" should be assigned the afternoon shift. Shortly after, the resignation of one of the other technologists in the department eliminated the need for the second shift during the first week of its operation. Salimy, who had been first assigned, asked Arena if she could then be relieved from the remainder of the shift (three days). Arena responded by walking away and entering her office. When Salimy followed her and repeated the inquiry, Arena allegedly made a comment about "smelly camel jockeys" and refused to relieve Salimy from completion of the assignment. Arena denies making

4

the "camel jockey" remark. Plaintiff testified that she verbally complained about the comment to HR, but there is no institutional record of this complaint.

(3) In December, 2010, Salimy approached Arena about switching her "on-call time" during Christmas week in order to accommodate her earlier request for vacation time during this holiday. Arena allegedly responded with the comment, "Camel jockeys don't celebrate Christmas." However, Salimy was granted the vacation leave as requested, and Arena ultimately assigned Salimy's "on-call time" to two other technologists. Arena denies making this second "camel jockey" comment. Salimy alleges that she verbally reported this incident to a supervisor at some time in early 2011, but again, there is no institutional record of the complaint.

Salimy further testified that she was aware of a corporate compliance hot-line number created by Bethesda to receive discrimination complaints, but acknowledged that she never used it to report Arena's alleged comments.

In addition to Arena's failure to accommodate Salimy's request to be excused from the short-lived afternoon shift (of one week duration), Salimy contends that Arena consistently assigned her to the most physically difficult lab assignments throughout the term of her employment, and refused her periodic requests for back-up assistance. In addition, Salimy contends that Arena always cut her hours first when the patient census was low, but Salimy was unable to identify the total number of hours which she worked compared to other technologists at any given time. Salimy testified that she complained to HR about this disparity in scheduling, and, when she was called in to discuss the matter, was told by Arena that she was treated differently because she was different without further elaboration.

Further, Salimy contends she was verbally counseled and "written up" for various incidents

as a result of Arena's discriminatory animus toward her. First, in 2006, she received verbal counseling for arguing with a co-worker, Sonia Singh, resulting in advisory to communicate more effectively with her co-workers. In September 2011, she received a disciplinary suspension after another co-worker, Sharon Reed, complained that Salimy called her "stupid" during a joint effort to repair a broken camera. In the corresponding "work in progress" write-up, the reporter describes Salimy as "unapproachable to fellow co-workers," and "angry via words and facial expressions and sarcastic questions/comments."

On March 26, 2012, Salimy received a second written counseling based on a co-worker's allegation that she dropped orders for four patients and failed to properly care for a patient. In December 2012, Salimy received a third written counseling for failing to properly call out in accordance with department procedures, and was warned that continued violations of this nature may lead to termination. In May 2013, Salimy was suspended for leaving an IV line in a nursing home patient after the injection was completed. In her deposition testimony, Salimy acknowledged that she placed this IV line, and that the patient was discharged with the line still in place, but contended that a co-worker present at the time of discharge was responsible for its removal.

During her deposition testimony, Salimy expressed the belief that the various "write-ups" and disciplinary measures implemented against her at Bethesda were "to some extent" based on Arena's discriminatory animus toward her, deriving this perception from the two "camel jockey" comments which she attributes to Arena.

### III. Discussion

#### A. Disparate Treatment Discrimination

Plaintiff may prove unlawful employment discrimination by way of disparate treatment

6

theory using either "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-672 (7th Cir. 2008) (explaining misleading nature of nomenclature and reiterating that direct method may rely on either direct or circumstantial evidence, while the indirect method proceeds with purely circumstantial evidence under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the direct method of proof, a plaintiff may introduce direct or circumstantial evidence to create a triable issue as to whether an adverse employment action was motived by a discriminatory intent. *See EEOC v. Joes's Stone Crabs, Inc.*, 296 F.3d 1265 (11th Cir. 2002); *Isbell v. Allstate Insurance Co.*, 418 F.3d 788 (7th Cir. 2005). A plaintiff may proceed by showing either "an acknowledgment of discriminatory intent by the defendant, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759 (7th Cir. 2001).

The episodic use of ethnic, racial or religious-based slurs in the workplace alone does not operate as direct evidence of discrimination; rather, the kind of language that is treated as direct evidence of discrimination is limited to those "actions or statements of an employer reflecting a discriminatory or retaliatory attitude *correlating to the discrimination or retaliation complained of* by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (emphasis added) (quoting *Caban-Wheeler v Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990). *See e.g. Cardelle v. Miami Beach Frateral Order of Police*, — Fed. Appx. —, 2014 WL 6653679 (11th Cir. 2014) (age-based slurs made by non-decision makers, or statements by decision makers unrelated to the decisional process itself are not direct evidence of improper discrimination).

Conversely, under the indirect method of proof, a plaintiff may establish a *prima facie* case of discrimination through circumstantial evidence under the familiar burden-shifting framework set

7

forth in *McDonnell-Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). To establish a *prima facie* case of discrimination under this paradigm, a plaintiff alleging discrimination must show (1) she was a member of a protected class; (2) she was qualified for the position or otherwise met her employer's legitimate performance expectations; (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees outside of her protected class. *Maynard v. Board of Regents of Div. Of Universities of the Florida Dept. of Educ. ex rel. University of South Florida,* 342 F.3d 1281, 1289 (11th Cir.2003), citing *McDonnell-Douglas*, 411 U.S. at 802. If the plaintiff successfully establishes a *prima facie* case under this test, a rebuttable inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Essex v. United Parcel Services, Inc.*, 111 F.3d 1304 (7th Cir. 1997).

Once the defendant provides a legitimate explanation, the burden shifts back to plaintiff to show that the proffered reason is a pretext for discrimination. To carry this burden, the plaintiff must show that a reasonable fact-finder would find the employer's reasons for its actions incredible because of inherent weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the explanation. *See Putnam v. Secretary, Dept. of Veterans Affairs*, 510 Fed. Appx. 827 (11th Cir. 2013) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). "Ultimately, if the proffered reason is one that might motivate a reasonable employer, the plaintiff must meet the reason 'head on and rebut it.'" *Id.*, quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

### B. Retaliation

To establish a *prima facie* case of retaliation under Title VII or Section 1981, a plaintiff must

show: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse action; and (3) there is some causal relation between the two events. *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (elements required to establish retaliation claim under Section 1981 are same as those required under Title VII).

Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework" for determining whether a plaintiff has made a *prima facie* showing of an (1) adverse employment action or (2) retaliation. *Barnett v Athens Regional Medical Center, Inc.*, 550 Fed Appx 711 (11th Cir. 2013), citing *Standard v A.B.E.L. Serv. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Generally, in either instance, "memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1236 (11th Cir. 2001).

Rather, a negative evaluation must actually lead to a material change in the terms or conditions of employment, such as an evaluation that directly disentitles an employee to a raise of any significance. *Gillis v. Georgia Dept. of Corrections*, 400 F.3d 883, 88 (11th Cir. 2005). Proof of a direct economic impact is not required in all cases, but "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Davis*, 245 F.3d at 1239.

### C. Hostile Work Environment

To establish a hostile work environment claim, a Title VII plaintiff must prove: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment

9

was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F. 3d 264 (5th Cir. 2002).

To show the fourth element, i.e. impact on a term or condition of the employment, the plaintiff must demonstrate that she has experienced harassment so "severe and pervasive" that it altered a term or condition of her employment and created "an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Title VII does not operate as a "general civility code," and simple teasing, offhand comments and isolated incidents – unless extremely serious – do not rise to the level of an actionable "hostile work environment." *Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803 (11th Cir. 2012).

### D. Application

#### 1. Disparate Treatment Claim: Adverse Employment Action Element

In this case, Salimy contends she was treated differently in the Bethesda workplace based on an impermissible discriminatory animus toward her national origin or religion. Specifically, she contends she was treated differently from similarly situated co-workers outside of her protected class (non-Muslim, non-foreign born individuals) through subjection to less favorable shift assignments, shift cuts, and disparate disciplinary treatment. The initial question posed is whether any of these employment consequences constitutes actionable "adverse employment action" within the Title VII paradigm.

In considering whether an employer's conduct constitutes an "adverse employment action" in this context, the employee's subjective view of the significance and adversity of the employer's conduct is not controlling; rather, the employment action must be materially adverse as viewed by

a reasonable person in the circumstances. Disciplinary counseling and write-ups, without more, do not rise to this level. *See e.g. Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232 (11th Cir. 2001) (job performance memo to African-American town police officer, describing his conduct as "unacceptable" and accusing officer of ignoring basic aspect of job did not constitute "adverse employment action" under Title VII, where officer did not suffer any loss of pay or benefit or experience further discipline in consequence).

In this case, the verbal counseling and cautionary disciplinary write-ups alleged by Salimy are not connected to any tangible effect on her employment, and hence do not qualify as actionable "adverse employment action." The disciplinary suspensions, based on improper patient care, fall into a different category; however, as to these instances, Salimy does not demonstrate the existence of similarly situated co-workers charged with similar patient-related offenses who were treated more favorably, and hence fails to establish a *prima facie* case of disparate treatment based on circumstantial proofs. The shift cuts similarly pose the possibility of a tangible economic effect that might qualify as an "adverse employment action," but again, Salimy fails to adduce any evidence of similarly situated co-workers who were not subjected to the shift cuts during low patient censuses at the Bethesda facility.

The court likewise concludes that Salimy's initial assignment to the afternoon work shift (as the first technician selected for the rotation) was not a materially adverse employment action, and therefore, is not a legal basis for a disparate treatment discrimination claim. *Jackson v. Hall County Government*, 518 Fed. Appx 771 (11th Cir. 2013) (employee failed to show that purportedly unfavorable shift assignments were materially adverse employment actions); *Langenbach v. Wal-Mart Stores, Inc.* 761 F.3d 792 (7th Cir. 2014) (assignment to night shift not materially adverse);

11

*Road v. Town of Farmington*, 567 Fed Appx 24 (D.C. Cir. 2014) (same); *Thomsen v. Romeis,* 198 F.3d 1022, 1027-28 (7th Cir. 2000) (written reprimands with only "speculative" consequences do not constitute adverse actions)*; Zelaya v UNICCO Service Co.*, 733 F. Supp. 2d 121, 132 (D.D.C. 2010).

### 2.  Retaliation Claim:  Adverse Employment Action Element

The plaintiff's retaliation claims – based on theory that Arena took punitive action against her in the form of less desirable shift assignments, shift cuts and various disciplinary actions in retaliation for her complaints to HR about her derogatory "camel jockey" remarks – likewise fail for lack of any evidence of actionable "adverse employment action."

### 3.  Disparate Treatment: Circumstantial Evidence: Comparator Proofs

Even assuming, *arguendo,* that the circumstances of plaintiff's shift assignment, shift cuts, or disciplinary history qualify as actionable "adverse action" under Title VII, the plaintiff is still unable to establish a *prima facie* disparate treatment discrimination claim for lack of evidence of sufficiently similar comparators who were treated more favorably.  Instead, plaintiff conclusorily alleges that other similarly situated employees outside of her protected class were treated better, but she does not identify these individuals by name or circumstance, nor does she show a factual basis for any personal knowledge of the circumstances of any comparators.

Because plaintiff adduces no competent evidence of similarly situated persons outside her protected class who were treated more favorably, in terms of shift assignments, shift cuts, or disciplinary write ups, she fails to come forward with sufficient comparator evidence to establish a *prima facie* case of national origin or religious discrimination.  *See e.g. Burdette v Federal Express Corp* , 367 Fed Appx. 628 (6th Cir. 2010) (discharged employee of delivery service company, who

was Seventh Day Adventist, failed to establish that she was treated differently than similarly situated employees based on her religion, where no other employee holding same position and seniority as plaintiff was permitted to have all Saturdays off, and no evidence that employer was willing to deviate from its "three strikes" policy against employees committing similar misconduct).

### 4. Disparate Treatment: Direct Evidence

Plaintiff alternatively contends that comparator evidence is not necessary to sustain her Title VII and Section 1981 disparate treatment claims because the record contains direct evidence of discriminatory animus on the part of her immediate supervisor, in the embodiment of the two "camel jockey" remarks attributed to Christy Arena.

However, as it is not made to appear that either comment was made in connection with the challenged adverse employment action, this language does not qualify as direct evidence of discrimination which may independently sustain the disparate treatment claims. The first comment attributed to Arena was allegedly made shortly after Arena's announcement of the newly created afternoon shift, but there is no evidence correlating the comment to Arena's decision-making process in selecting Salimy as the first technician for assignment to the rotation. Further, as discussed above, the shift assignment itself does not rise to the level of an actionable "adverse employment action," and for this independent reason, any derogatory comments made in conjunction with it do not elevate the incident to the level of an actionable disparate treatment claim.

With regard to the second comment attributed to Arena, i.e. "Camel jockeys don't celebrate Christmas," this comment likewise does not attend an "adverse employment action," where, by Salimy's own admission, she was granted the holiday vacation time which allegedly prompted the comment, and Arena assigned Salimy's "on call time" to other co-workers in accommodation.

13

### 5. Hostile Work Environment

On her hostile work environment claim, Salimy alleges two instances involving derogatory comments attributed to Arena that she considers to be discriminatory on the basis of national origin or religion – the "smelly camel jockey" comment made shortly after Arena's announcement of the creation of the afternoon shift assignment, and the "camel jockey" comment made at the time Salimy questioned her assignment of "on call time" during the Christmas holiday that she had scheduled for vacation time.

The court agrees that the alleged comments qualify as comments made in derogation of a Middle Eastern national origin, but, recognizing that hostile environment harassment claims must demonstrate a continuous period of harassment, concludes that these remarks do not, as a matter of law, rise to the level of an actionable hostile work environment. *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990); *Singh v. Town of Mount Pleasant*, 172 Fed. Appx. 675 (7th Cir. 2006) (two comments over four months in fifteen months of employment cannot be described as severe and pervasive); *Harvey v. Maytag Corp.*, 105 Fed. Appx. 863 (7th Cir. 2004) (two comments by supervisors over five years not pervasive enough to constitute harassment). *See also Byrd v Postmaster General*, 582 Fed. Appx. 787 (11th Cir. 2014); *Selby v Tyco Healthcare Group, L.P.*, 301 Fed. Appx 908 (11th Cir. 2008); *McKitt v. Ala. Alcoholic Beverage Control Bd.*, 571 Fed. Appx. 867 (11th Cir. 2014).

### IV. Conclusion

For the foregoing reasons, summary judgment is appropriately entered in favor of the defendant on all disparate treatment and retaliation claims.

It is accordingly **ORDERED AND ADJUDGED:**

1. The defendants' motion for summary judgment [ECF NO. 31] is **GRANTED**.

2. Final summary judgment shall enter in favor of defendants and against plaintiff by separate order of the court pursuant to Rule 58.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 8th day of January, 2015.

                                                 Daniel T. K. Hurley
                                                 United States District Judge

cc. All counsel